## LOUISVILLE & NASHVILLE RAILROAD CO. *v.* EARL.

1. In an action against a railway company to recover damages for a tortious seizure and carrying away of goods which previously had been delivered to the plaintiff and upon which all carriage charges had been paid, in which both actual and exemplary damages are claimed, it is competent to allege and prove that the company was actuated by the plaintiff's failure to pay demurrage of a small sum on a former shipment, which was disputed, and the circumstances relating to such disputed item of demurrage.

2. There was a claim for exemplary damages, and the court did not err in defining, in an instruction to the jury, what such damages included.

3. The criticisms on the various rulings are without substantial merit; and the verdict is not for such an amount as to require the grant of a new trial on the ground that it is excessive.

FEBRUARY 13, 1913.

Action for damages. Before Judge Roan. DeKalb superior court. September 9, 1911.

*Tye, Peeples & Jordan,* for plaintiff in error.

*Hooper Alexander,* contra.

EVANS, P. J. The plaintiff sued the railroad company in tort to recover damages for repossessing itself of a car-load of coal, which had been delivered to him and upon which all freight charges had been paid, because of the plaintiff's failure to pay a disputed demurrage claim on a former shipment. He sued for punitive and actual damages, and obtained a verdict for $1,010.40. The evidence authorized a finding that the plaintiff ordered a car-load of coal shipped over the defendant's road, to be delivered at Atlanta. The plaintiff's place of business was in a suburb of Atlanta, and there was some delay in receiving notice of the arrival of the shipment. The defendant claimed demurrage in the sum of four dollars, which was paid, as well as the freight charges, and the car was delivered to the plaintiff at Clifton, and unloaded by him sometime in August, 1909. About two weeks thereafter the demurrage clerk of the Atlanta joint terminals, which included the defendant company, demanded two dollars additional demurrage on the car. The

plaintiff disputed the correctness of this claim and declined to pay it, unless approved by the demurrage bureau maintained by the defendant and other railroad companies for the adjustment of demurrage, which already had under consideration the plaintiff's liability for the four dollars which he had paid on the same car. While this matter of demurrage was pending, and before hearing from the bureau, the plaintiff ordered a second car of coal, which was delivered to him, on his request, at Clifton, where other customers of the defendant were served in that vicinity. The plaintiff paid the freight and began to unload the car. He had unloaded about one third of the coal when the defendant caused the car to be carried away; the engineer with a profane epithet ordering the plaintiff's servants to get their wagon out of the way. About a week later the plaintiff received a letter from the defendant, advising him that the car was placed in the Hunter Street yards, awaiting delivery; and that if plaintiff desired delivery at Clifton, it would be necessary to discharge the demurrage bill claimed to be due on the former car. The plaintiff never received the balance of the coal. He did not hear from the demurrage bureau until sometime after this occurrence. The defendant exacted and received the two dollars disputed demurrage as a condition precedent to delivering to the plaintiff any more cars at Clifton. The defendant introduced its car-service rule, to the effect that it will not deliver cars on specially designated or private tracks, where the consignee refuses to pay, or unnecessarily defers the settlement of, demurrage bills, but will make delivery at the company's public delivery track.

1. One of the contentions of the defendant is that the circumstances attending the delivery of the first car of coal had no relation to the tort complained of, and that allegations respecting them should have been stricken from the pleadings. We do not think so. The action is in tort, and punitive damages are sought to be recovered. The tort complained of is in the seizure by the defendant of the plaintiff's coal after it had been delivered to him and was in process of unloading, and the motive inducing this action was the plaintiff's failure to pay a small demurrage charge on a previous shipment. "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrong-doer

from repeating the trespass, or as compensation for the wounded feelings of the plaintiff." Civil Code, § 4503. The conduct of the defendant in the seizure of the plaintiff's goods is illustrated by the claim of demurrage on the former shipment.

2. The plaintiff in asking for judgment prayed for "damages in vindication of his right and in punishment of the defendant for the aggravating and embarrassing facts hereinbefore set forth." The court charged the jury that the plaintiff sought to recover, in addition to actual damages, exemplary damages to deter the wrong-doer from repeating the trespass and to compensate him for his wounded feelings and humiliation in being deprived of his property in the way described. It is contended that the court erred in stating the plaintiff's contention or claim for damages, as not being authorized by the pleadings. The criticism concerns verbal nicety of expression more than real difference in substance. Exemplary damages in tort are allowed to deter a repetition of the trespass. They are given in addition to compensation for a loss sustained, in order to punish and make an example of the wrong-doer, so as to deter him from repeating the wrong. 3 Words & Phrases, 2577.

3. We do not think that the court erred in his rulings on demurrer, or as complained of in the motion for new trial. There remains only to be considered the exception that the verdict is excessive. When the actual damages which were proved at the trial are deducted from the verdict, something over $800 appears to have been allowed as exemplary damages. The defendant delivered the car of coal to the plaintiff, and received its full freight charges. Without warning the railroad company ordered away the plaintiff's servants who were unloading the car, and carried it to another point on its tracks. It was several days before the plaintiff received notice where his coal could be found, and then it was at a point two or three miles from the original place of delivery. The defendant's excuse is that its car-service rules justified it in refusing to deliver cars on specially designated tracks in case demurrage on former shipments were unpaid. These rules do not justify the defendant in retaking property which has been delivered, simply because a demurrage charge on a former shipment has not been paid. Besides, by those very rules, disputes in demurrage were adjustable by a bureau of the defendant's own selection. The difference between the shipper and the railroad company as to the

four-dollar claim of demurrage was pending before the bureau when the railroad company demanded an additional charge of two dollars, and the shipper informed the defendant's agent at the time of the demand for the additional demurrage that he would abide the judgment of the demurrage bureau. When the car of coal was delivered in September, and the freight charges on it were paid, no demand was made for this two dollars, and the car was placed, by the defendant, for unloading. Under the circumstances we think the jury were warranted in finding exemplary damages, and the amount of the verdict was not so large as to require a reversal on the ground that it is excessive.

> *Judgment affirmed. All the Justices concur.*